CONOPCO, INC., d/b/a Van Den Bergh Foods Company, Plaintiff–Appellant–Cross–Appellee,

v.

**CAMPBELL SOUP COMPANY, Defendants–Appellee–Cross–Appellant.**

Nos. 1235, 1660, Dockets 95–7905(L), 95–7963(XAP).

United States Court of Appeals, Second Circuit.

Argued April 12, 1996.

Decided Sept. 9, 1996.

---

James K. Baughman, Campbell Soup Co., on the brief), for defendant–appellee–cross—appellant.

Before: KEARSE and ALTIMARI, Circuit Judges, and MORAN,* District Judge.

ALTIMARI, Circuit Judge:

Plaintiff-appellant-cross-appellee Conopco, Inc. (d/b/a Van den Bergh Foods Co.) ("Conopco") commenced the present action against defendant-appellee-cross-appellant Campbell Soup Co. ("Campbell") for false advertising and misrepresentation under the Lanham Act, 15 U.S.C.A. §§ 1051–1128 (1976, 1983, 1982 & West Supp.1996) and state law. The United States District Court for the Southern District of New York (Preska, *J.*) granted a judgment on partial findings pursuant to Fed.R.Civ.P. 52(c), dismissing Conopco's case as barred by laches. The Court then denied Campbell's petition for attorneys' fees.

Conopco now appeals claiming, *inter alia,* that the district court failed to give sufficient weight to the public interest in preventing false advertising and consumer confusion and, thus, erred in dismissing the case under the doctrine of laches. Campbell asserts that it was entitled to a presumption of laches, and it cross-appeals contending that the court should have awarded it attorneys' fees pursuant to § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) (1994). Because we find both Conopco's and Campbell's arguments unavailing, we affirm the district court in full.

## BACKGROUND

Conopco and Campbell are competitors in the pasta sauce market. Conopco produces Ragu brand sauces and Campbell produces pasta sauces under the brand name Prego. When Campbell entered the sauce market with Prego, Ragu was the dominant sauce, holding 60% of the pasta sauce market. Since Prego's entry into the market, many new brands and flavors of sauces have emerged, leading to heightened competition

H. Peter Haveles, Jr., Cadwalader, Wickersham & Taft, New York City (Terence F. Gilheany, Ralph Berman, Manal Z. Khalil, Cadwalader, Wickersham & Taft, Arnold I. Friede, Van Den Bergh Food Co., on the brief), for plaintiff–appellant–cross–appellee.

Mari M. Gursky Shaw, Dechert Price & Rhoads, Philadelphia, PA (Andrew L. Fish, Dechert Price & Rhoads, John M. Coleman,

---

* The Honorable James B. Moran, United States District Judge for the Northern District of Illinois, sitting by designation.

within the industry. This stiff sauce competition is not surprising in light of the fact that the sauce market now accounts for $1.3 billion in annual gross revenues.

In March 1988, Campbell began an advertising campaign focusing upon the thickness of its Prego sauces. After testing various advertising strategies, Campbell's advertising agency, FCB/Leber Katz ("Leber Katz"), determined that the most effective way to establish Prego's thickness was to conduct a side-by-side comparison of Prego with the market leader—namely, Conopco's Ragu Old World Style sauce. Campbell's advertisements showed Prego next to Ragu Old World Style and stated that, as one could demonstrate in one's own home, Prego was thicker and chunkier than Ragu. While Conopco has conceded that Prego is, in fact, thicker and chunkier than Ragu Old World Style, Conopco asserts that the advertisements are misleading because they suggest that Prego is thicker than *all* of Conopco's Ragu sauces, not just the Ragu Old World Style variety. In fact, when compared with some of Conopco's thicker varieties of Ragu sauce (e.g., Ragu Thick & Hearty), Prego is notably thinner.

Within two weeks of the first airing of the comparison advertisements, Conopco became aware of Campbell's campaign. Campbell's initial advertisements identified the sauces being compared as "Prego" and "Ragu Old World Style" in superimposed text; however, the commercials' voice-overs designated the sauces generally as "Prego" and "Ragu." In March 1989, Conopco lodged a complaint with the three major television networks, asserting that Campbell's comparison commercials were misleading. As a result of these complaints, Campbell modified its commercials' voice-overs to refer to Conopco's sauce as "Ragu Original Style." The networks took no steps to bar the modified commercials from being televised.

In 1991, Conopco again challenged Campbell's comparison advertisements along similar lines, this time with the National Advertising Division of the Better Business Bureau ("NAD"). The NAD ruled that Campbell could not refer to "Ragu Old World Style" generically as "Ragu" in its commercials.

Shortly thereafter, Campbell further modified its advertisements, referring to Conopco's sauce in both the voice-overs and script of its commercials as "Ragu Old World Style." Still believing the comparison advertisements to be misleading, Conopco brought this action on June 23, 1993—more than five years after Conopco first became aware of Campbell's advertising campaign—pursuant to Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) (Supp.1996) and state law.

At the outset of its litigation, Conopco moved for a preliminary injunction against the further airing of Campbell's allegedly misleading commercials. On December 20, 1993, the district court granted a motion by Conopco to consolidate its motion for a preliminary injunction with a trial on the merits of Conopco's claim for permanent injunctive relief. On March 11, 1994, Campbell moved for summary judgment on the basis of laches. The district court denied Campbell's motion, finding that issues of material fact remained in dispute. A trial commenced to determine the appropriateness of injunctive relief. At the close of Conopco's case on May 31, 1994, Campbell moved for judgment on partial findings pursuant to Fed.R.Civ.P. 52(c), again asserting laches. By order dated March 17, 1995, the district court granted Campbell's motion and dismissed Conopco's case as barred by laches.

In post-trial submissions, Campbell moved for the award of attorneys' fees. The district court denied Campbell's motion, stating that attorneys' fees will only be awarded under the Lanham Act when the party seeking recompense has demonstrated bad faith on the part of the opposing party. *See Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 77 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). Because Campbell could not demonstrate bad faith on the part of Conopco, the district court denied Campbell's motion.

On appeal, Conopco argues that the district court: (1) abused its discretion by failing to give the public interest sufficient weight in its laches determination; (2) incorrectly determined that Campbell had been prejudiced by Conopco's delay in bringing suit; and (3) improperly relied upon a hear-

say affidavit that had not been subject to cross-examination. Campbell asserts that the district court erred in finding that no presumption of laches applied and cross-appeals the denial of its motion for attorneys' fees.

## DISCUSSION

### I. *Presumption of Laches*

■ Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitation remain an important determinant in the application of a laches defense. Because the Lanham Act establishes no limitations period for claims alleging unfair competition or false advertising, and because there is no corresponding federal statute of limitations, we look to "the most appropriate" or "the most analogous" state statute of limitations for laches purposes. *See Wilson v. Garcia,* 471 U.S. 261, 266–68, 105 S.Ct. 1938, 1941–43, 85 L.Ed.2d 254 (1985); *Ceres Partners v. GEL Assocs.,* 918 F.2d 349, 352–53 (2d Cir.1990); *Adler v. Education Dep't of New York,* 760 F.2d 454, 456 (2d Cir.1985); *Gordon and Breach Science Publishers S.A. v. American Inst. of Physics,* 859 F.Supp. 1521, 1528–29 (S.D.N.Y.1994). That statute of limitations then determines which party possesses the burden of proving or rebutting the defense.

> "When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show ... circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove the circumstances making it inequitable to apply laches to his case."

*Leonick v. Jones & Laughlin Steel Corp.,* 258 F.2d 48, 50 (2d Cir.1958) (quoting *Reconstruction Fin. Corp. v. Harrisons & Crosfield, Ltd.,* 204 F.2d 366, 370 (2d Cir.), *cert. denied,* 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953)); *see University of Pittsburgh v. Champion Prods. Inc.,* 686 F.2d 1040, 1045 (3d Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982). Therefore, prior to the running of the most closely analogous state statute of limitations there is

no presumption of laches and the burden remains on the defendant to prove the defense. Alternatively, once the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not be applied in the case.

■ In the case at hand, the district court determined, consistent with virtually every district court in this Circuit that has addressed the question, that a six year fraud statute, *see* N.Y. Civ. Prac. L. & R. 213(8) (McKinney 1990), is applicable in the context of misleading advertisement, *see Gordon and Breach,* 859 F.Supp. at 1529 (collecting cases). Campbell contends that the district court is mistaken and that the three year statute of limitations for injury to property, *see* N.Y. Civ. Prac. L. & R. 214(4) (McKinney 1990), should be applied as the governing statute, *see Construction Technology, Inc. v. Lockformer Co.,* 704 F.Supp. 1212, 1219–21 (S.D.N.Y.1989). According to Campbell, injury to property is more properly analogous to a Lanham Act claim because neither injury to property nor false advertising involves *intentional* deception, unlike common law fraud. Therefore, Campbell argues that Conopco's five year delay established a presumption of laches which Conopco should have been required to rebut.

Because it is clear that both intent and fraud play an important role in all Lanham Act claims, we find Campbell's argument unpersuasive. In determining to which statute this court should analogize in the laches context, we must look to the language of the underlying federal statute in question. *See Wilson,* 471 U.S. at 268, 105 S.Ct. at 1942. Section 45 of the Lanham Act explicitly states that the federal policy underlying the Act is, *inter alia,* "to protect persons engaged in ... commerce against unfair competition" and "to prevent *fraud* and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C.A. § 1127 (West Supp.1996) (emphasis added).

As the language of the Act makes clear, there is an intimate relationship between fraud and injury under the Lanham Act. In

addressing the appropriate analogous statute of limitations for false advertising claims the district court in *Gordon and Breach* explained:

> Although Section 43(a)'s "primary target" is trademark infringement, ... "that section applies as well to those deceptive business practices which, like trademark infringement, attempt to induce consumers to purchase an advertiser's goods by falsely passing them off as the same as, or better than those of a competitor. Such claims can best be analogized to causes of action sounding in fraud."

859 F.Supp. at 1528–29 (quoting *PepsiCo v. Dunlop Tire & Rubber Corp.*, 578 F.Supp. 196, 199 (S.D.N.Y.1984)). *Cf. Mylan Labs., Inc. v. Pharmaceutical Basics, Inc.*, 808 F.Supp. 446, 454 (D.Md.1992) ("Clearly the degree to which a business intends to mislead the public will bear on how carefully it undertakes the deception and, therefore, the likelihood of its success."), *rev'd on other grounds*, 7 F.3d 1130 (4th Cir.1993), *cert. denied*, 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). We find the reasoning in *Gordon and Breach* persuasive. It is clear that section 43(a), 15 U.S.C.A. § 1125 (1982 & West Supp.1996), pertaining to "false description[s] or representation[s]," is properly analogized to New York's six year fraud statute. Thus, because Conopco initiated this action within the six year analogous period of limitations, the district court properly determined that there was no presumption of laches.

## II. *Prejudice*

■ In order to prevail on the affirmative defense of laches, a defendant must prove that it has been prejudiced by the plaintiff's unreasonable delay in bringing the action. *See Tri–Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 484, 130 L.Ed.2d 396 (1994); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir.1980). A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be "inequitable" in light of the delay in bringing that claim. *See id.* Specifically, prejudice ensues when a "defendant has changed his

position in a way that would not have occurred if the plaintiff had not delayed." *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 808 n. 17 (8th Cir.1979) (quoting *Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958–59 (4th Cir.1971)), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). As the district court clearly found, Campbell committed massive resources to best exploit a marketing strategy which it chose a half dozen years ago. By waiting over five years to assert its present claim, Conopco precluded the possibility that Campbell could effectively adopt an alternative marketing position. Thus, the district court properly found that Campbell had been prejudiced by the delay.

Conopco argues that the district court abused its discretion in finding such prejudice. Specifically, Conopco contends that the district court erroneously determined that Campbell will lose its market position as the "thick" sauce once it is no longer allowed to run its allegedly misleading comparison advertisements. According to Conopco, no one questions that Campbell will still be able to promote Prego as the "thick" sauce on the market; it simply will no longer be able to run false and misleading advertisements that suggest Prego is thicker than all varieties of Conopco's Ragu sauces. Since Campbell will still be able to maintain its "thickness" position, Conopco contends that Campbell has not been prejudiced by the five year delay in bringing this action.

Conopco's argument is unavailing. In finding prejudice, the district court noted that for over five years Campbell has sought to establish its "thickness" position in the pasta sauce market, utilizing the most persuasive advertising campaign available— namely, comparison advertisements. At the time Campbell adopted its thickness position, a number of alternative sauce positions— such as the "healthy" sauce or the "economical" sauce—remained available and as yet unexploited. Since that time, however, many of the potential pasta sauce "positions" have been adopted by new producers (e.g., Hunt's is marketed as the "value" sauce, Classico as the "authentic" sauce, and Healthy Choice as

the "healthy" sauce). As the district court rightfully noted, "[i]f Conopco had filed suit earlier, when there remained more options available in the market, it would have been easier for Campbell to adopt a different, yet effective, marketing strategy for Prego." Campbell was, therefore, clearly prejudiced by Conopco's delay in challenging its comparison advertisements.

Had Conopco brought this action in a more timely manner, Campbell might well have chosen some alternative position rather than fight a court battle over the advertising campaign which it believed to best promote its chosen image as the thick sauce. Since such alternatives are no longer readily available to Campbell, Conopco's delay was clearly prejudicial.

## III. *The Public Interest*

■ Conopco asserts that the district court, when applying laches to the case at hand, failed to give adequate consideration to the public's interest in being free from misleading advertisement. As Conopco points out, the public good is of paramount importance when considering the equitable defense of laches. *See Maryland–National Capital Park & Planning Comm. v. United States Postal Serv.*, 487 F.2d 1029, 1042 (D.C.Cir. 1973) ("Equitable remedies depend not only on a determination of legal rights and wrongs, but on such matters as laches, good (or bad) faith, and most important an appraisal of the public interest."). Therefore, Conopco contends that the district court clearly erred in relying upon laches where it was clear that the public interest would be harmed by the continued airing of Campbell's misleading advertisements. Conopco suggests that if we affirm the district court's application of laches, our ruling will be tantamount to sanctioning the ongoing use of misleading advertisements.

■ "The determination of whether laches bars a plaintiff from equitable relief is entirely within the discretion of the trial court," and as such, will only be disturbed upon a showing of an abuse of discretion. *Tri–Star Pictures,* 17 F.3d at 44. Although we agree with Conopco's assertion that the public interest must be considered in any application

of laches, we find that the district court did not abuse its discretion in applying the laches defense to the case at hand.

■ It is well established that the equitable defense of laches may be applied to cases brought under the Lanham Act. *See* 15 U.S.C. § 1069 (1994) (laches applicable to Lanham Act proceedings). Indeed, this Court has repeatedly upheld the defense in the Lanham Act context. *See, e.g., Saratoga Vichy Spring Co.,* 625 F.2d at 1040–1042; *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331, 1343–44 (2d Cir.1975). While Conopco concedes that this Court has applied laches to Lanham Act cases in the *trademark* context, Conopco attempts to distinguish those cases from cases concerning misleading advertisement. According to Conopco, the Lanham Act's protections against trademark infringement invoke less compelling public interests than those involving misleading advertisements and therefore dictate that laches be applied with greater caution when misleading advertisements are involved. We see no such distinction.

■ As Conopco properly notes, the public interest underlying the Lanham Act's prohibition of misleading advertisement is that of preventing consumer confusion or deception. This interest is identical to the public's interest in protecting against trademark infringement. As we stated in *Scarves By Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172 (2d Cir.1976), "[t]he trademark laws protect ... the public's interest in not being misled." Accordingly, because the Lanham Act universally protects against consumer confusion, we see no distinction between trademark cases and misleading advertisement cases for the purpose of laches. In both contexts, laches may properly be applied so long as its application is equitable in light of the public's interest in being free from confusion and deception.

Finally, in further support of its position, Conopco relies upon *American Home Products Corp. v. Johnson & Johnson,* 654 F.Supp. 568, 591–92 (S.D.N.Y.1987), a case in which the district court declined to apply laches in the context of misleading advertise-

ments concerning over the counter drugs. We have consistently held that the public's interest is especially significant when health and safety concerns are implicated, as with the advertising of over the counter medications. *See, e.g., Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 568–69 (2d Cir.1971) (citing *Morgenstern Chem. Co. v. G.D. Searle & Co.*, 253 F.2d 390 (3d Cir.), *cert. denied*, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958)). *See also Morgenstern Chem. Co.*, 253 F.2d at 393 ("'Prevention of confusion and mistakes in medicines is too vital to be trifled with'") (quoting *Cole Chem. Co. v. Cole Labs., Inc.*, 118 F.Supp. 612, 617 (E.D.Mo.1954)). Thus, while public health and safety concerns may well overwhelm other considerations in the application of laches, such an outcome is not dictated in the case at hand.

Because laches may properly be applied to misleading advertisement claims under the Lanham Act, and because the public interest is in no way determinative of such an application in this case, the district court did not abuse its discretion in applying laches below.

## IV. *Hearsay Affidavit*

 Conopco contends that the district court erred in basing its finding of prejudice upon the unchallenged hearsay affidavit of Gary Moss, Campbell's Vice–President of Global Advertising (the "Moss Affidavit"), which was submitted with Campbell's motion for judgment on partial findings. *See* Fed. R.Civ.P. 52(c) (party must be "fully heard" on issue before court may enter judgment against that party). According to Conopco, the district court erroneously relied upon the Moss Affidavit for four propositions: (1) "Campbell had cultivated this 'thickness' image at no small cost;" (2) Campbell had spent over $75 million on the Prego comparative campaign; (3) consumers have come to associate Prego with "thicker than the market leader;" and (4) Campbell will lose a significant portion of its investment, including its image as "thicker than the market leader," if it abandons its campaign. Because all of these propositions in the Moss Affidavit went unchallenged, Conopco argues that it was

erroneous for the district court to rely upon them in making its laches determination.

Conopco's argument is without merit. Each proposition cited above is either uncontroverted or supported by the trial testimony of Murray Kessler, a Campbell Vice–President, or Elizabeth Green, an employee of Campbell's advertising agency, Leber Katz. To the extent that the district court relied upon the Moss Affidavit in reaching its ultimate conclusion, that determination was fully supported by the cross-examined trial testimony. Accordingly, the district court's application of laches is fully supported by the record below.

## V. *Attorneys' Fees*

 Finally, Campbell argues that the district court erred in refusing to award it reasonable attorneys' fees. The decision to award attorneys' fees "fall[s] well within the district court's discretion, and absent evidence of its abuse," will not be disturbed on review. *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir. 1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Because we find that the district court did not abuse its discretion, we affirm its denial of attorneys' fees.

 Campbell sought attorneys' fees under section 35(a) of the Lanham Act, which states that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (1994). Campbell claims that the district court erred in requiring it to demonstrate bad faith on the part of Conopco in order to recover attorneys' fees. Despite Campbell's argument, this court has explicitly stated that "[the Lanham Act] allows recovery of a reasonable attorney's fee only .... 'on evidence of fraud or bad faith.'" *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir.1993) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986)). *See Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 751 (2d Cir.1994) (attorneys' fees only awarded upon finding of bad faith); *Motown Prods., Inc. v. Cacomm,*

*Inc.,* 849 F.2d 781, 787 (2d Cir.1988) (per curiam); *Universal City Studios,* 797 F.2d at 77. *See also Scotch Whisky Ass'n v. Majestic Distilling Co.,* 958 F.2d 594, 599 (4th Cir.) (collecting cases), *cert. denied,* 506 U.S. 862, 113 S.Ct. 181, 121 L.Ed.2d 126 (1992).

While Campbell acknowledges the requirement of bad faith in *Twin Peaks,* it contends that the express language of that case applies only to prevailing *plaintiffs,* and not to parties that successfully defend against a Lanham Act claim, such as itself. *See Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 771 F.2d 521, 524, 526 n. 2 (D.C.Cir. 1985) (requiring a "less than bad faith" standard for prevailing defendants). We see no such distinction. Nothing in the *Twin Peaks* decision, nor in any other Lanham Act case in this Circuit, indicates that a different standard should apply for prevailing plaintiffs and prevailing defendants. *See Scotch Whisky Ass'n,* 958 F.2d at 599 (noting that the Second Circuit requires a showing of bad faith "irrespective of the prevailing party"). We see no reason to create such a rule.

Accordingly, because Campbell failed to demonstrate bad faith on the part of Conopco, the district court properly denied Campbell's motion for attorneys' fees.

## CONCLUSION

For the reasons stated above, we affirm the district court's judgment on partial findings pursuant to Fed.R.Civ.P. 52(c), dismissing Conopco's claim as barred by laches. Further, we affirm the district court's denial of attorneys' fees in the absence of a showing of bad faith.