**Florence A. MANDEL, Plaintiff**

v.

**CHAMPION INTERNATIONAL CORP.**
Successor in Interest International
Paper Company, Defendant

**No. 03 CIV.2079(SCR).**

United States District Court,
S.D. New York.

March 21, 2005.

Florence A. Mandel, pro se.

Barry David Haberman, New City, NY, Mark Adam Kassner, Schenectady, NY, for Plaintiff.

Lawrence T. D'Aloise, Clark Gagliardi & Miller, P.C., White Plains, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background:

### A. Statement of Facts:

Florence A. Mandel (the "Plaintiff") is a former employee of Champion International Corp., the successor in interest to International Paper Company (the "Defendant" or "Champion").

The Plaintiff, who was born on January 26, 1946, was hired by the Defendant on or about June 2, 1987. The Plaintiff was hired to be a secretary and was assigned to the Defendant's purchasing department. Nelly Said ("Said"), who held the title of Buyer, was the Plaintiff's immediate supervisor from the date Plaintiff's employment with the Defendant began until Said's employment ended on September 22, 1996. Beginning in 1990, William Gruffi ("Gruffi") was Said's immediate supervisor and, as such, the Plaintiff reported to Gruffi through Said.

In 1991, the Plaintiff's job title was changed from Secretary to Purchasing Clerk,[1] the title that the Plaintiff kept until the end of her employment at Champion. In 1995, Said went on disability leave, during which time the Plaintiff assumed at least some of Said's responsibilities. In September of that year, Said's employment at Champion ended, leaving Said's position as Buyer vacant.

At the age of 49, the Plaintiff applied for the newly available position of Buyer. Gruffi, along with three other Champion employees, interviewed Plaintiff for the position, but ultimately did not offer it to her. The Defendant claims that the Plaintiff was given an interview only as a courtesy,

---

1. The parties dispute whether or not the Plaintiff's job responsibilities changed along with this change in title.

and that the individuals who interviewed her unanimously agreed that she was not qualified for the job.

In December 1995, Gruffi interviewed Michele Armenante, a 42 year old external candidate who, according to the Defendant, was considerably more qualified than the Plaintiff. Armenante was offered and accepted the position, and began employment with Champion in January 1996. Armenante held the position briefly, however, and resigned a few days later, apparently dissatisfied with the position.

After Armenante resigned, the Plaintiff once again applied for the position, but was once again not offered it. Gruffi and the rest of the Champion interviewing team conducted a second interview of Janet Soriano, a 28 year old external candidate who had been interviewed once before but ultimately passed over in favor of Armenante. Defendant claims that, although Soriano was less qualified than Armenante, she was more qualified than the Plaintiff, and was offered and accepted the position later in February 1996.

On or about March 27, 1996, the Plaintiff filed a complaint ("1996 Complaint") with the New York State Division of Human Rights ("DHR"), alleging that the Defendant failed to promote her because of her age. The Plaintiff alleges that, soon thereafter, she began to suffer retaliation from Gruffi and the Defendant. Specifically, the Plaintiff claims that, during the month of April 1996, she received numerous reprimands and admonishments from Gruffi, even though Gruffi's complaints about the Plaintiff included "old past dated issues." According to the Plaintiff, more "issues" were placed in her employment file during a 15–day period in April 1996 than during the entire 9–year history of her employment with the Defendant. Further, the

Plaintiff alleges that Gruffi instructed Soriano to "spy" on the Plaintiff and that the Plaintiff's employee review was postponed, which caused her not to receive an increase in her compensation.

The Plaintiff states that she complained about the alleged harassment in writing to Gruffi and the Chief Executive Officer and Vice President of the Defendant, but never received any response. The Plaintiff's employment relationship with the Defendant ended on or about May 21, 1996, when Plaintiff was 50 years old. The Plaintiff claims that she was constructively discharged by the retaliatory actions taken against her.

On July 14, 2000, almost four years later, the Plaintiff amended her charging complaint with the New York State Division of Human Rights to add a claim for constructive discharge in retaliation for her 1996 complaint. On or about March 25, 2003, the Plaintiff brought suit in this court.

**B. Procedural History:**

The court understands the Plaintiff to be alleging[2] three separate causes of action: (1) a federal cause of action alleging a discriminatory failure to promote, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (the "ADEA"); (2) a federal cause of action alleging retaliatory conduct, resulting in an adverse employment action—constructive discharge and a denial of compensation—pursuant to Title VII and the ADEA; and (3) a state cause of action alleging constructive discharge due to retaliatory harassment for filing a complaint with the

**2.** When the Plaintiff filed her complaint in this case she was acting *pro se*. Since that time, she has retained an attorney, who clari-

fied the Plaintiff's claims in Plaintiff's briefing papers in opposition to this motion.

New York State Division of Human Rights.

Pursuant to Federal Rule of Civil Procedure 56, the Defendant has made a motion for summary judgment. In support of its motion, the Defendant makes the following arguments: (1) the Plaintiff failed to exhaust her administrative remedies; (2) the Plaintiff's claims for retaliatory discharge and constructive discharge are barred by the doctrine of laches; (3) the Plaintiff cannot establish a prima facie case of age discrimination; (4) the Plaintiff cannot establish a prima facie case of retaliation; (5) the Plaintiff cannot establish a pretext of discrimination; and (6) the Plaintiff cannot establish a prima facie case of age-based harassment.[3] The Plaintiff argues that the arguments advanced by the Defendant are unpersuasive.

## II. Analysis

### A. Standard of review:

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### B. Exhaustion of Administrative Remedies

■ Defendant argues that Plaintiff failed to exhaust administrative remedies with respect to her retaliation and constructive discharge claims. In order to properly exhaust administrative remedies for an ADEA or Title VII claim, a plaintiff must file a charge within 300 days of the alleged discriminatory treatment. See 42 U.S.C. § 2000e–5(e); 29 U.S.C. § 626(d) and 633(b). A district court has jurisdiction to hear only Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge that is "reasonably related" to that alleged in the EEOC charge. See Butts v. City of New York Dept. of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir.1993).

■ In the case at bar, the Plaintiff filed her initial DHR complaint in 1996, alleging that the Defendant failed to promote her to the "Buyer" position because of her age. The Plaintiff amended her complaint with the DHR on or about July 11, 2000 ("2000 Complaint"), alleging that the Defendant constructively discharged her in retaliation for her filing of the initial complaint. But this, contrary to Defendant's argument, does not constitute a failure to exhaust administrative remedies. The Second Circuit has held that an allegation that an employer has retaliated against an employee for filing an EEOC charge is reasonably related to that which was alleged in the EEOC charge itself. See Butts, 990 F.2d at 1402.

Nonetheless, Defendant argues that the Plaintiff cannot premise her retaliation claim on Title VII in the context of age discrimination. This argument is not persuasive, as courts have recognized a cause of action for retaliation in this context. See, e.g., Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir.2003) (The same standards and burdens applicable to claims of retaliation in the context of Title VII also apply in the context of the ADEA).

**3.** In her reply papers, the Plaintiff made it clear that, in fact, she is not asserting a claim of age-based harassment As such, the court need not, and will not, address Defendant's argument with respect to it.

■ Defendant also argues that Plaintiff's retaliation claim should be dismissed to the extent it claims retaliation against her not for filing the EEOC charge but for making informal complaints to management. The court does not understand the Plaintiff to have premised her retaliation claim on anything other than the filing of the EEOC charge, but to the extent she has, claims based on informal complaints could in fact provide the basis for a retaliation claim. *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 65 (2d Cir.1992) (an informal complaint to a supervisor can constitute a protected activity).[4]

### C.  Doctrine of Laches

Second, the Defendant contends that the Plaintiff's retaliation and constructive discharge claims should be barred by the doctrine of laches, because the Plaintiff failed to make these claims until four years after the filing of her initial DHR complaint.

■■ The Second Circuit has held that "a party asserting a laches defense must show that 'the plaintiff has inexcusably slept on [its] rights so as to make a decree against the defendant unfair.'" *Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 132 (2d Cir.2003) (citing *Prudential Lines, Inc. v. Exxon Corp.,* 704 F.2d 59, 65 (2d Cir.1983)). Additionally, the doctrine of laches requires a showing by the defendant that "it has been prejudiced by the plaintiff's unreasonable delay in bringing the action." *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 192 (2d Cir.1996). When there is a specific period of limitations set by statute, "laches will generally not be invoked to shorten the statutory period." *Ikelionwu v. United States,* 150 F.3d 233, 238 (2d Cir.1998) (internal citations omitted).

■ The Defendant claims that it has been prejudiced by the delay because documents relating to the alleged acts of retaliation and constructive discharge have been lost or inadvertently destroyed and that witnesses' recollections of these issues have failed. In effect, therefore, Defendant appears to be arguing that records and witnesses' memories have been compromised with respect to Plaintiff's claims for retaliation and constructive discharge, but preserved with respect to Plaintiff's failure to promote claim. This argument is not credible and is certainly not persuasive.

Therefore, Plaintiff's retaliation and constructive discharge claims are not barred by the doctrine of laches.

### D.  Prima Facie Case of Age Discrimination Resulting From Failure to Promote

■ In order to bring an age discrimination claim under the ADEA for failure to promote, a plaintiff must establish the following elements: (1) the plaintiff is within a protected class, (2) the plaintiff applied for a promotion for which she was qualified, (3) the plaintiff was rejected for that position, and (4) the defendant kept the position open and continued to seek applicants or filled the position with a substantially younger candidate. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Mauro v. Southern New England Telecomm.,* 208 F.3d 384, 386 (2d Cir.2000).

---

4.  Defendant also appears to argue that Plaintiff's constructive discharge claim is also barred for failure to exhaust administrative remedies. This argument is also unpersuasive, as Plaintiff has clearly alleged that the constructive discharge was in retaliation for filing the EEOC charge and, as such, is clearly within the scope of *Butts.*

■ In this case, the Defendant argues that the Plaintiff cannot establish the second element—that she was qualified for the Buyer position.[5] In particular, Defendant notes that the job description and posting for the Buyer position set forth a number of skills and qualifications that the Plaintiff did not possess including one to three years of buying experience, adequate interpersonal and communication skills, supervisory experience and some years of college education.

Nevertheless, the Plaintiff has offered sufficient evidence to, at the very least, place this issue in dispute. First, Plaintiff claims that she performed at least some of the duties of Buyer satisfactorily for several months while Said was absent (although the parties dispute how much responsibility she actually had). Also, Plaintiff claims that she received Employee of the Month rewards for her work in the purchasing department and notes that she was given an interview for the Buyer position, even though Champion's policy was to interview only candidates who satisfied the basic qualifications of the position. It is for a jury, not the court at summary judgment, to resolve these issues of material fact. Plaintiff's cause of action for discriminatory failure to promote should not be dismissed.

### E. Prima Facie Case of Retaliation Under the ADEA

■ Additionally, the Defendant argues that the Plaintiff has failed to make out a prima facie case for retaliation. A plaintiff must set forth the following elements to sustain a prima facie case for retaliation: (1) the plaintiff participated in protected activity known to the defendant; (2) the employer subjected the plaintiff to adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Saulpaugh v. Monroe Comm. Hosp.*, 4 F.3d 134, 141 (2d Cir. 1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Holt v. KMI–Continental, Inc.*, 95 F.3d 123 (2d Cir.1996). The Defendant argues that the Plaintiff has failed to satisfy the second and third elements.

■ With respect to the second element, the Plaintiff has alleged two employment actions that she claims to have been materially adverse: (a) denial of employee performance review and resulting denial of pay increase; and (b) constructive discharge. The court agrees that a denial of a pay increase, if proven, would constitute an adverse employment action. *See Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir.1986).[6]

■ Moreover, with respect to causation, Plaintiff notes that she was told that she would not be receiving her performance review within three weeks of filing her initial complaint. *See Manoharan v. Columbia Univ. Coll. of Phys. & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988) (causal connection established indirectly by showing that the protected activity was closely followed in time by the adverse action).

Defendant argues that no inference of retaliation can be made in this case because the complaints made about the Plaintiff's performance, which arguably culminated in a denial of her performance review and pay increase, were part of an ongoing program of progressive discipline

---

5. The Defendant has not challenged the other three elements; thus, for the purposes of this motion the Court accepts those elements as established.

6. A constructive discharge also constitutes an adverse employment action, *see Stetson v.* *NYNEX Service Co.*, 995 F.2d 355, 360 (2d Cir.1993), but, for reasons discussed below, the court finds that Plaintiff has failed to allege facts sufficient to permit a reasonable factfinder to find a constructive discharge in this case.

beginning before the Plaintiff's complaint was made. In *Slattery v. Swiss Reinsurance Am. Corp.*, cited by the Defendant, the Second Circuit held that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." 248 F.3d 87, 95 (2d Cir.2001).

But timing is not the only basis for Plaintiff's claim in this case. Plaintiff has also pointed out that, although issues had arisen throughout her employment, no complaints were made during the several month period in which Said was absent from work and the Plaintiff assumed purchasing department responsibilities and, moreover, the number of complaints increased significantly after she filed her complaint. This is sufficient to withstand summary judgment on the issue of causation.

Plaintiff's cause of action for retaliation should not be dismissed at this time.

## F. Whether Plaintiff Can Establish a Pretext of Discrimination or Retaliation

■ Defendant argues that Plaintiff could not establish to a reasonable jury that its legitimate non-discriminatory reason for not promoting the Plaintiff—that she was not qualified for the position of Buyer—was a pretext. The court disagrees. The Plaintiff has provided sufficient evidence, discussed above, to rebut the claim that she was not qualified, and summary judgment is not appropriate on this issue.

■ Defendant also argues that Plaintiff cannot establish that Defendant's reason for complaining about Plaintiff's performance—that her performance was lacking—was also a pretext. But, as discussed, the Plaintiff has offered sufficient evidence to withstand summary judgment on this issue as well.

## G. Whether Plaintiff Can Establish a Prima Facie Case of Constructive Discharge

■ To establish a "constructive discharge" under state or federal law, a plaintiff must show that the employer deliberately made her working conditions so intolerable that she was forced into an involuntary resignation. *See Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir.1993). The Plaintiff has premised her claim of constructive discharge primarily on the criticism of her job performance, denial of a raise and/or promotion, and Gruffi's alleged use of Soriano to spy on the Plaintiff while at work.

The Second Circuit has held, however, that these kinds of allegations, even if true, are an insufficient basis for a claim of constructive discharge. *See Stetson*, 995 F.2d at 361 (finding that though the plaintiff was dissatisfied with his assignments, with the criticisms of his work, and with his compensation, the record fell far short of reflecting working conditions so difficult or unpleasant as to permit an inference that a reasonable person in the plaintiff's position would feel forced to resign). *See also Bennett v. Watson Wyatt & Co.*, 136 F.Supp.2d 236, 250–51 (S.D.N.Y.2001) (The standard for constructive discharge is even higher than that required to prevail on a hostile environment claim, which itself requires that the plaintiff show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment).[7]

7. Plaintiff distinguishes *Stetson* on the grounds that the plaintiff in that case made no charge of retaliation along with his constructive discharge claim, and *Bennett* on the grounds that the plaintiff suffered no adverse action prior to filing the charging complaint.

Nothing that Plaintiff has alleged, even if proven, would come close to meeting this standard.

Therefore, Plaintiff's constructive discharge claim is dismissed.

### III. Conclusion

For these reasons, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

It is so ordered.

But the Plaintiff has not given, and the court cannot conceive of, any reason why the presence or absence of retaliation or a retaliation claim has any bearing on the applicable standard for constructive discharge.